**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Continental Casualty Company, et al., | No. CV-19-05163-PHX-DJH |
| Plaintiffs, | **ORDER** |
| v. | |
| Platinum Training LLC, et al., | |
| Defendants. | |

This matter is before the Court on Cross-Motions for Summary Judgment.[1]  The Claimant Defendants filed a Motion for Summary Judgment (Doc. 82), to which Plaintiff Continental Casualty Company and Valley Forge Insurance Company ("Continental") filed a Response (Doc. 85) and Claimants filed a Reply (Doc. 86).  Continental filed a Motion for Summary Judgment (Doc. 106), to which Claimants filed a Response (Doc. 112) and Continental filed a Reply (Doc. 116).  Filed with the briefing is nearly 5,000 pages of exhibits, evincing the lengthy history and difficult nature of this case.[2]

Continental filed this action seeking a declaratory judgment that it is not responsible for any portion of the judgment awarded to the Claimants after a jury trial in Arizona Superior Court, and that it has no duty to continue to defend Stephen Gore on appeal in the

---

[1] Both parties requested oral argument in this matter.  The Court finds that the issues have been fully briefed and oral argument will not aid the Court's decision.  *See* Fed. R. Civ. P. 78(b) (court may decide motions without oral hearings); LRCiv 7.2(f) (same).

[2] The Court notes that both parties flout the Court's Scheduling Order by attaching full copies of exhibits, rather than pin citing to specific notations.  The summary judgment briefing, together with the Complaint, includes nearly 5,000 pages of briefing and exhibits, including hundreds of pages of documents that are not relevant to the issues at hand.

state court matter.

## I.    Background[3]

This case arises out of the horrific actions taken by Stephen Gore, which resulted in his felony criminal conviction and a multi-million-dollar civil judgment against him. Gore and his wife owned and operated Biological Resource Center, Inc. ("BRC"), an anatomical donation organization that encouraged individuals to donate their bodies for what was advertised as medical and scientific research.  (Doc. 1).  On behalf of BRC, Gore solicited donors and obtained consent for body donations; this consent was limited to scientific and medical use of the bodies.  Once receiving consent, Gore coordinated the transfer of donor bodies to BRC's Phoenix facility, performed serology tests for infectious diseases, disarticulated and stored body parts, shipped body parts to other companies, and cremated bodies that were not used.  (Docs. 106-27 and 106-30).  BRC carried no liability insurance.  (Doc. 106-7).

Charles and Amy Oddo own Platinum Training, LLC, and Platinum Medical, Inc., (collectively "Platinum"), a company that conducts hands-on medical training programs. Starting in 2012, Platinum procured various anatomical specimens from BRC.  On March 1, 2013, Platinum signed an agreement with BRC whereby BRC would provide anatomical specimens and Platinum would reimburse BRC for the costs associated with the procurement.  On May 23, 2013, Gore signed an employment agreement with Platinum to become its Director of Anatomical Operations.  Continental Casualty Company issued various commercial package insurance policies to Platinum.  These policies included liability insurance, and covered employees and agents of Platinum.  Continental was the insurer of Platinum at all relevant time periods.

At some point in 2014, family members of individuals who had donated their bodies to BRC discovered that Gore's company was misrepresenting how the bodies were being used.  Rather than being used solely for medical research, it was discovered that

---

[3] The general facts are not in dispute and were established during the state court proceedings.

Gore was selling various body parts for a profit to third parties for non-medical purposes.[4] This type of use exceeded the consent given.

In 2014, federal and state law enforcement officers, headed by an FBI task force, conducted a raid on BRC's Phoenix facility, discovering a horrific scene of dismembered bodies and unsanitary conditions.  Gore was subsequently charged by the State of Arizona with a number of felonies.  On October 7, 2015, Gore was convicted of a felony illegal control of an enterprise charge, admitting that he obtained proceeds through a scheme to defraud and engaged in racketeering by exceeding donor consents.  (Doc. 106-34).  The Claimants, who are all relatives of individuals whose bodies Gore mishandled and profited from, filed a civil suit in Maricopa County Superior Court against Gore, BRC, Platinum Training and Platinum Medical, Inc., (collectively "Platinum"), Platinum's owners Charles and Amy Oddo, and others, alleging severe emotional trauma sustained as a result of Gore's actions and seeking compensatory and punitive damages.

A.    Trial Court Summary Judgment Order

The Claimants, who totaled over 20 individuals, argued that Platinum could be held vicariously liable for the acts of Gore, reasoning that Gore was acting as an agent of Platinum.  Prior to the state court trial, Platinum filed a motion for summary judgment arguing that it was not liable for any negligent or criminal conduct of Gore related to claimants whose loved one's bodies were donated prior to the time that he became an employee of Platinum.  Platinum argued that, at the earliest, Gore became an agent of Platinum on May 24, 2013, when the parties executed an employment agreement, and therefore, Platinum could not be liable for Gore's conduct prior to that date.  The Claimants below argued that Platinum "is responsible for all of the wrongdoing of Stephen Gore and BRC."  (Doc. 106-23 at 4).

On June 14, 2019, after oral argument on the motion, Judge Timothy Thomason issued his order in Platinum's favor.  The order found as follows:

---

[4] BRC also provided hundreds of bodies to Arthur Rathburn, who allegedly dismembered the bodies and sold them to numerous third parties for sums totaling in the millions of dollars.  Rathburn is not a party to this proceeding.

1

2      Platinum Training does not dispute that Stephen Gore could be liable for
       plaintiffs' claims.  The salient question, therefore, is whether Gore can be
3      characterized as an agent of Platinum Training, whose acts are attributed to
       that entity.  Plaintiffs claim that "Gore was an employee and owner of
4      Platinum when he committed the acts" in question. (Response at 10:11).  Of
       course, if Gore was acting as an employee or agent of Platinum when he
5      committed the acts in question that allegedly gave rise to liability, then
6      Platinum Training can be liable under the doctrine of *respondeat superior*.
       *Higginbotham v. AN Motors of Scottsdale*, 228 Ariz. 550, 552 (Ariz. Ct. App.
7      2012).

8      Plaintiffs have presented some evidence that Gore became an employee
9      of Platinum Training at some point in time.  They specifically point to an
       Employment Agreement dated May 24, 2013.  As such, if Gore engaged in
10     actionable conduct with respect to any of the plaintiffs, Platinum Training
11     could have vicarious liability, if Gore was in fact acting on behalf of Platinum
       Training.
12

13     …

14     Defendants point out that only eleven plaintiffs have consent forms and death
15     dates that are after the date of [Gore's] Employment Agreement [May 24,
       2013]. It seems evident that Platinum Training cannot be vicariously liable
16     for Gore's actions before he became its agent.

17
(Doc. 106-23 at 8)[5].
18
       The court noted that the Claimants did not make a factual showing that Platinum
19
had direct liability for Gore's actions.  (*Id.* at 10).  In holding that Gore was not an
20
employee until May 24, 2013, the trial court concluded that Platinum had no liability for
21
Gore's conduct prior to that date.  *Id.*  Therefore, Judge Thomason found as a matter of
22
law that Platinum had no liability for Gore's conduct against the Claimants whose claims
23
arose prior to May 24, 2013, and that those Claimants would proceed to trial against Gore
24
_____
25     [5] The Claimants also argued that Platinum was liable under an alter ego theory, whereby
       Platinum asserted control over Gore's company, BRC.  The trial court noted that the alter
26     ego theory is utilized to impose liability on a parent company for the acts of subsidiary.
       This "piercing the corporate veil" theory is not used to hold one corporation liable for the
27     acts of a completely separate corporation.  The court held that "Plaintiffs are trying to hoist
       liability on a completely separate corporation, Platinum Training, based on the allegation
28     that that corporation asserted control over BRC. Plaintiffs have cited no case law that has
       imposed alter ego liability in a situation such as this."  (Doc. 106-23 at 8-9).  The court
       dismissed Platinum on this ground as well.

alone.  In reaching his decision, Judge Thomason noted that the Claimants' "Response is full of generalized, unsupported statements. Very little effort is made by plaintiffs to actually tie facts to the causes of action. . . . Rather, they seem to feel as if all they need to do is establish that Mr. Gore, the principal of BRC, did some bad things and then allege that Platinum is responsible for that wrongdoing.  That is obviously not how it works." (Doc. 106-23 at 5).

After the court's finding that Gore was an employee of Platinum after May 24, 2013, Platinum and Gore settled with the eleven claimants who had signed consent forms with Platinum after that date.  Those claimants then released their claims and the trial court dismissed Platinum.  The remaining Claimants—those who had signed consent forms and death dates before Gore became an employee of Platinum—proceeded to trial against Gore.

**B.     Jury Verdict**

The remaining Claimants proceeded to trial against Gore on three counts: common law fraud; intentional infliction of emotional distress; and mishandling of bodily remains. *Beecher v. Biological Resource Center, Inc,* 2015 CV-013391 (Maricopa Cty. Sup. Ct. 2015).  At trial, the evidence established that Gore intentionally misrepresented how his business used donated human remains, leaving individuals to believe that their loved ones were being used for scientific and medical research, rather than selling their body parts to other entities.   Gore admitted that his misconduct constituted criminal fraud and racketeering.  Evidence presented at trial establish that the claimants suffered long term emotional and mental illnesses, including depression, post-traumatic stress disease/disorder ("PTSD"), panic attacks, suicidal thoughts, and numerous other symptoms as a result of  Gore's tortious misconduct.

On November 19, 2019, after a four-week civil jury trial, the jury awarded the Claimants $8,500,000 in compensatory damages for emotional distress and $50,000,000 in punitive damages.  Following trial, and pursuant to state statute, the trial court reduced the punitive damages award to $8,500,000, and entered judgment against Gore in the

amount of $17,000,000.[6]   As Platinum was dismissed before trial, no portion of the judgment is against Platinum.

### C.    Arizona Court of Appeals

Following the jury verdict, the Claimants appealed Judge Thomason's order granting summary judgment and dismissing Platinum, arguing that the trial court erred in holding that Gore was not acting as an agent of Platinum prior to the date of his employment agreement on May 24, 2013.  On appeal, the Claimants argued that Gore was an employee, owner, and member of Platinum and that his wrongful acts should be imputed to Platinum.  *Aloia v. Platinum Med. LLC*, 2021 WL 1696122 (Ariz. Ct. App. Apr. 29, 2021).

In affirming the trial court's order on summary judgment, the Arizona Court of Appeals held that it was undisputed that Gore's employment contract with Platinum was executed on May 24, 2013, and also undisputed that all of the trial claimants' consent forms for donations were signed prior to that date.  *Id.* at *2.  The *Aloia* Court further noted that the Claimants "did not provide admissible and non-conclusory evidence in support of their argument that Platinum had the right to control Gore's conduct before Gore was employed by Platinum.  Thus, as to these Appellants, all of whom had signed consent forms that predated Gore's employment with Platinum, the superior court noted that Platinum could not be vicariously liable to these Appellants for Gore's actions. Given these circumstances, the court did not err in determining that Appellants could not recover via *respondeat superior*." *Id.*  Furthermore, the appeals court held that even assuming the Claimants had established that Gore was an agent of Platinum, they had not established Gore was acting within the scope and course of his agency with Platinum in furthering its business.  *Id.* Likewise, the appellate court affirmed the trial courts grant of summary judgment on Claimants' alter ego theory.  Ultimately, the Court of Appeals entirely affirmed the trial court's dismissal of Platinum.  *Id.*

---

[6] The claimants appealed the Superior Court's decision to reduce the punitive damages award. The appeal is presently pending before the Arizona Court of Appeals, with oral argument scheduled for August 18, 2021.  The amount of the punitive damages award has no bearing on this Court's ruling.

### D.   Federal Court Coverage Action

On September 13, 2019, shortly before the civil trial began in the state court against Gore, Continental filed this declaratory judgment action, seeking a declaration from this Court that Continental is not liable to indemnify the judgment against Stephen Gore.  (Doc. 1).  Continental argues that because the state trial and appellate court has found that Gore was not an agent of Platinum during the relevant time period, it has no duty to indemnify the judgment.  Continental also seeks a declaration that it has no duty to defend its insureds in the state court action, but does not seek summary judgment on that count.  (Doc. 106).  Although recognizing that it has no liability based on the rulings of the state court, Continental seeks to prevent future litigation filed by the Claimants.

## II.   Legal Standards

### A.   Declaratory Judgment

Under the federal Declaratory Judgment Act (the "DJA"), a court "may declare the rights and other legal relations of any interested party seeking such declaration[.]"  28 U.S.C. § 2201(a).  Hence, this Act "does not grant litigants an absolute right to a legal determination."  *United States v. Washington*, 759 F.2d 1353, 1356 (9th Cir. 1985) (*en banc*) (citing *Zemel v. Rusk*, 381 U.S. 1, 19 (1965); *Public Service Commission v. Wycoff Co.*, 344 U.S. 237, 241 (1952)).  "The decision to grant declaratory relief is a matter of discretion even when the court is presented with a justiciable controversy."  *A.L. Mechling Barge Lines, Inc. v. United States*, 368 U.S. 324, 331 (1961); *U.S Cheesebrough-Ponds, Inc. v. Faberge, Inc.*, 666 F.2d 393, 396 (9th Cir. 1982) (internal citations omitted).  "The 'actual controversy' requirement of the Act is the same as the 'case or controversy' requirement of Article III of the United States Constitution.  The party seeking the declaration bears the burden of establishing justiciability."  *Nat'l Union Fire Ins. Co. of Pittsburg, PA v. ESI Ergonomic Sols., LLC*, 342 F. Supp. 2d 853, 862 (D. Ariz. 2004) (internal citations and quotations omitted).  To satisfy Article III requirements, the dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests;" and be "real and substantial" and request "specific relief through a decree of a

conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal citations omitted).

To maintain a claim under the DJA, "a plaintiff must establish . . . sufficient immediacy and reality to warrant issuance of a declaratory judgment." *Scott v. Pasadena Unified School District*, 306 F.3d 646, 658 (9th Cir. 2002). Moreover, "[a] declaratory judgment offers a means by which rights and obligations may be adjudicated in . . . actual controvers[ies] that ha[ve] not reached a stage at which [an interested] party may seek a coercive remedy and in cases where [such] a party . . . could sue for coercive relief [but] has not yet done so." *Seattle Audubon Soc. v. Moseley*, 80 F.3d 1401, 1405 (1996). Thus, declaratory judgments are "intended to allow *earlier access* to federal courts in order to spare potential defendants from the threat of impending litigation." *Id.* (emphasis added).

It is equally well settled that "[d]eclaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *Washington*, 759 F.2d at 1357 (citing *Winpisinger v. Watson*, 628 F.2d 133, 141 (D.C. Cir. 1980) (per curiam); *McGraw-Edison Co. v. Preformed Line Products Co.*, 362 F.2d 339, 342–43 (9th Cir. 1966) (citation omitted). "It follows that when neither of these results can be accomplished, the court should decline to render the declaration prayed." *McGraw-Edison Co.,* 362 F.2d at 342.

### B.    Duty to Indemnify

The duty of an insurer to indemnify requires proof by the claimant defendants of actual coverage. "An insurer's duty to indemnify hinges not on the facts the claimant alleges and hopes to prove but instead on the facts (proven, stipulated or otherwise established) that actually create the insured's liability." *Colorado Casualty Ins. Co. v. Safety Control Co. Inc.*, 288 P.3d 764, 772 (Ariz. Ct. App. 2012). The duty to indemnify only concerns facts "determined in the action . . . on the merits '[a]fter actual litigation.'" *Quihuis v. State Farm Mut. Auto. Ins. Co.*, 334 P.3d 719, 725 (2014). Thus, parties to a

subsequent coverage action are "precluded from challenging the existence and extent" of the liability decided in the underlying action.  *Id.*

**III.   Analysis**

The Claimants argue that Continental is bound to pay the judgment against Gore, reasoning that Gore was an agent of Platinum, and Continental is Platinum's insurer.  (Doc. 112).  Their arguments center on the interpretation of insurance policy, specifically arguing that the emotional injuries they sustained as a result of Gore's tortious conduct are "bodily injuries" under the policy.  (Doc. 82).  Alternatively, they argue that the policy definition of "bodily injury" is ambiguous, and when read in their favor, that the policy covers them. (Docs. 82 and 86).  Continental argues that Gore does not qualify as an insured under Platinum's policies as he was not an employee, agent, owner, or volunteer of Platinum prior to May 24, 2013, the date the trial court designated for liability of these Claimants. This determination, Platinum argues, was conclusively decided by the trial court, and affirmed by the Arizona Court of Appeals.  (Docs. 106 and 116).  Therefore, Continental seeks a declaratory judgment that it is not obligated to pay any judgment against Gore, as the state courts have already determined that Gore was not an employee of Platinum during the relevant time period.  Continental argues that the Claimants should be collaterally estopped from renewing these arguments here.

Before reaching the merits of Claimants' arguments as to the language of the insurance policy, the Court must examine whether it is precluded from reaching those issues based on the state courts' decisions.  Both the state trial court and appellate court orders point out that the Claimants failed to provide admissible evidence in support of their argument that Gore was an agent of Platinum prior to May 24, 2013.  The question for the Court is whether the Claimants can attempt to establish this connection here or whether they are estopped from doing so.

**A.   Collateral Estoppel**

Collateral estoppel, like the related doctrine of res judicata promotes "judicial economy by preventing needless litigation."  *Parklane Hosiery Co. v. Shore*, 439 U.S. 322,

326 (1979).  "[A] federal court considering whether to apply issue preclusion based on a prior state court judgment must look to state preclusion law."  *McInnes v. California*, 943 F.2d 1088, 1092–93 (9th Cir. 1991).  "Collateral estoppel, or issue preclusion, binds a party to a decision on an issue litigated in a previous lawsuit if the following factors are satisfied: (1) the issue was actually litigated in the previous proceeding, (2) the parties had a full and fair opportunity and motive to litigate the issue, (3) a valid and final decision on the merits was entered, (4) resolution of the issue was essential to the decision, and (5) there is common identity of the parties."  *Campbell v. SZL Properties, Ltd*., 62 P.3d 966, 968 (Ariz. Ct. App. 2003) (quoting *Garcia v. Gen. Motors Corp*., 990 P.2d 1069, 1073 (Ariz. Ct. App. 1999)).   Depending on whether collateral estoppel is being invoked "offensively" or "defensively," the last element regarding common identity of the parties may not be required.  *Id.*  "Offensive use of collateral estoppel occurs when a plaintiff seeks to prevent the defendant from relitigating an issue the defendant previously litigated unsuccessfully in an action with another party; defensive use occurs when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff previously litigated unsuccessfully against another party."  *Parklane Hosiery Co.*, 439 U.S. at 326 n. 4.  If the first four elements of collateral estoppel are present, Arizona permits defensive, but not offensive use of the doctrine.  *Standage Ventures, Inc. v. State*, 562 P.2d 360, 364 (Ariz. 1977).

### 1.    Issue Litigated in State Court

Claimants argue that the issue that Continental seeks to estop—whether it must indemnify Gore—was never litigated in the state court.  (Doc. 112 at 7).  They argue that the issue of whether Gore is insured under the Continental Policy is an issue for this Court to decide.  Continental argues that the issue decided in state court is broader than Claimants present.  Continental argues that it has already been established in the state court that Gore was not an agent of Platinum and that Platinum was not liable for his tortious conduct prior to May 24, 2013.  Thus, Continental argues the Claimants cannot now take a second bite at the apple of establishing that Gore was an agent of Platinum and therefore covered by the Continental policies simply because Continental was not a defendant in the state court

1   action.  (Doc. 106).

2          Claimants argue that this action presents the novel issue of whether Gore is insured

3   under Continental's policy.  What Claimants have not explained is how Gore could be

4   insured by Continental if he is not an agent of Platinum.  While it is true that the precise

5   issue the state court decided was not whether Gore met the definition of an insured under

6   Continental's policy, for the Court to consider that issue would necessarily entail

7   relitigating the issue of whether Gore was an agent, and thus an insured, of Platinum.

8          Moreover, while Claimants argue that the issue here is only related to insurance

9   coverage, a number of their exhibits and a significant portion of their briefing involves

10  arguments related to Gore's status as either a member, employee, or volunteer of Platinum

11  prior to May 24, 2013.  For instance, in their Response, Claimants argue the following:

> Gore was also a defined "Insured" during the time period *before* he became
> a formal, salaried Platinum Employee in May 2013 when he was acting as
> Platinum's Director of Anatomical Operations. The evidence in the record
> shows that from late 2011 forward, Gore was "performing duties related to
> the conduct of Platinum's business" and therefore qualified as a "volunteer
> worker" for coverage purposes under the policy. It was during this critical
> period that Gore was acting as Platinum's Director of Anatomical Operations
> with the specific duties of handling the distribution of the bodies and body
> parts of Platinum (including those of the JCDs). It is the mishandling of the
> JCDs bodies and body parts owned and controlled by Platinum during this
> time period, under Gore's direction, which is the trigger for coverage under
> the Policy.

20  (Doc. 112 at 4) (emphasis in original).  In this paragraph alone, the Claimants cited to 16

21  attached exhibits, spanning hundreds of pages, attempting to establish that Gore was an

22  agent of Platinum prior to May 24, 2013.[7]  (*Id.*)  This is the precise issue that was litigated

23  in the state court.  The appellate court noted that the Claimants "did not provide admissible

24  and non-conclusory evidence in support of their argument that Platinum had the right to

25  control Gore's conduct before Gore was employed by Platinum."  *Aloia v. Platinum Med.*

---

[7] Claimants also argue that they suffered their emotional injuries during the timeframe that
Gore was an employee of Platinum, and therefore coverage should apply.  This does not
appear to be an argument that was previously made or a fact that was established at trial.
Nor do Claimants provide legal support for this theory other than mentioning it in a single
sentence in their Response.  (Doc. 112 at 4).  Therefore, the Court will not consider it.

*LLC*, 2021 WL 1696122 (Ariz. Ct. App. Apr. 29, 2021).   And while it appears that Claimants are providing additional evidence here and making additional arguments as to the theory of Gore's alleged association with Platinum, those arguments needed to be made in the state court during the summary judgment process.  The Court finds that the Claimants have already litigated this issue in the state court.  Therefore, the first element of collateral estoppel is established.

### 2.     Full and Fair Oppourtunity to Litigate

The parties below fully litigated the nature of Gore's relationship with Platinum in a motion for summary judgment prior to trial.  The parties briefed and argued the issues and the state court issued a well-reasoned written order finding that Gore was not an agent of Platinum during the relevant time period, that Platinum could not be liable for Gore's actions, and dismissed Platinum from the case.  This decision was affirmed on appeal after a *de novo* review of all of the evidence that Claimants had presented in an attempt to establish the connection between Gore and Platinum.  *Aloia v. Platinum Med. LLC*, 2021 WL 1696122 (Ariz. Ct. App. Apr. 29, 2021).   The Court finds that this element is established.

### 3.     Final Decision

"[A] final judgment is any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." *Medley v. State*, 2014 WL 5494921, at *5 (Ariz. Ct. App. Oct. 30, 2014).  "[T]o be given preclusive effect, a judgment must be a firm and stable one, the 'last word' of the rendering court—a 'final' judgment as opposed to one that is considered merely tentative in the very action in which it was rendered." *Elia v. Pifer*, 977 P.2d 796, 803 (Ariz. Ct. App. 1998) (internal citations omitted).

Here, there is no dispute that the state court's order granting summary judgment for Platinum and dismissing it from the case was a final decision on the merits.  Regardless of the fact that Continental was not a part of the state court action, it is impossible for this Court to make the link between Gore and Continental when the state court has already

- 12 -

1 severed the link between Gore and Platinum.  The Claimants have had their day in court

2 on these issues, and the judgment of the trial court, as affirmed by the appellate court, is

3 final.  Moreover, that the Claimants appealed that order further indicates that the decision

4 was final.  *See Maria v. Najera*, 214 P.3d 394, 395 (Ariz. Ct. App. 2009) ("Pursuant to

5 statute, the general rule in Arizona is that jurisdiction of appeals is limited to final

6 judgments[.]").  Therefore, this element is established.

**4.      Issue Was Essential to the Decision**

8          "Whether a ruling is essential must be determined on a case-by-case basis."  *Garcia*

9 *v. Gen. Motors Corp*., 990 P.2d 1069, 1073 (Ariz. Ct. App. 1999).  Here, there is no dispute

10 that the issue of whether Gore was an agent of Platinum was essential to the decision that

11 Platinum was not liable for the conduct of Gore.  This issue was the basis for the trial court

12 dismissing Platinum and entering judgment in its favor.   Therefore, this element is

13 established.

**5.      Common Identity of Parties**

15          As Continental was not a party to the state court action, this element is not

16 established.  However, Arizona law permits defensive use of collateral estoppel if, as is the

17 case here, the first four elements are established.  *See Standage Ventures*, 562 P.2d at 364.

18 The issue then is whether Continental is attempting to use collateral estoppel defensively,

19 which is allowed under Arizona law, or offensively, which is not.

20          Claimants assert, without citing to any authority, that Continental is barred from

21 asserting collateral estoppel because it is doing so "offensively."  (Doc. 112).  They reason

22 that as Continental is the Plaintiff in this matter, it is an offensive attempt to use collateral

23 estoppel, rather than using it as an affirmative defense as permitted.  Claimants also argue

24 that a finding of collateral estoppel would lead to an "absurd result" where "motions

25 practice" would prevent Gore from seeking coverage. (Doc. 112 at 11).  Continental argues

26 that while it is technically the Plaintiff in this action, it is actually defending against future

27 litigation that may arise with the Claimants, and therefore this is an instance of defensive

28 collateral estoppel.  (Doc. 106 at 13).  Moreover, Continental argues that this Court must

- 13 -

1    accept the holding of the state court.

2         The Court agrees with both parties that the situation presented here does not fit

3    squarely within the framework provided by the case law on the defensive use of collateral

4    estoppel.  However, declaratory judgment actions are by their nature "defensive" actions.

5    *See Pub. Serv. Comm'n of Utah v. Wycoff Co*., 344 U.S. 237, 248 (1952) (observing that,

6    "a complaint in an action for declaratory judgment seeks in essence to assert a defense to

7    an impending or threatened state court action").  And while the parties here do not fit

8    precisely within the framework the courts use to define "offensive" and "defensive"

9    collateral estoppel, the Supreme Court and other courts have accounted for this reality by

10   describing the roles of the parties in a declaratory action as being flipped.  *Id.* ("In this case,

11   as in many actions for declaratory judgment, the realistic position of the parties is

12   reversed"); *GEICO Gen. Ins. Co. v. Tucker*, 2014 WL 1713766, *5 (D. Ariz. Apr. 30, 2014)

13   ("traditional roles of plaintiff and defendant are somewhat less differentiated in a

14   declaratory judgment action.").

15        Moreover, a key consideration is whether the use of estoppel in this way would be

16   "unfair to a defendant."  *Parklane Hosiery Co*., 439 U.S. at 323.  Courts are primarily

17   concerned about collateral estoppel being used to bar claims from completely unrelated

18   parties.  Here, while Continental was not a party to the prior proceeding, it was in privity

19   with Platinum as its insurer.  It necessarily follows from the final judgment of the state

20   court that if Platinum was not liable for Gore's conduct, Continental cannot be liable for

21   that conduct either.  And, at its core, defensive use of collateral estoppel is based on the

22   principal that it would be "unjust to permit one who has had his day in court to reopen

23   identical issues by merely switching adversaries."  *Bernhard v. Bank of Am. Nat. Tr. &*

24   *Sav. Ass'n*, 122 P.2d 892, 895 (Cal. 1942).  This is precisely what Continental seeks here,

25   to prevent Claimants from arguing identical issues against a different, albeit related

26   adversary.

27        Therefore, the Court finds that Continental's use of collateral estoppel here, as a

28   defense to coverage, is permissible, based on the state court's final decision on the merits

1    that Continental's insured had no liability for the conduct of Gore.  This element is

2    established as well and the Claimants are estopped from relitigating the trial court's

3    decision that Gore was not acting on Platinum's behalf and that Platinum, and thus

4    Continental, has no liability to these Claimants.

5            **B.      Abstention**

6            Although not raised by the parties, the Court finds that in addition to collateral

7    estoppel, general principles of federal court abstention and comity preclude re-litigation of

8    the coverage issue presented here.

9            "Cases brought by state-court losers complaining of injuries caused by state-court

10   judgments rendered before the district court proceedings commenced and inviting district

11   court review and rejection of those judgments," are not allowed and shall be dismissed.

12   *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 284–85 (2005).  "A United

13   States District Court has no authority to review final judgments of a state court in judicial

14   proceedings."  *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 482 (1983).  Federal district

15   courts lack the requisite appellate authority to exercise appellate authority over the ruling

16   of a state court, for a federal district court's jurisdiction is "strictly original."  *Rooker v.*

17   *Fidelity Trust Co*., 263 U.S. 413, 416 (1923).  Of federal courts, only the Supreme Court

18   of the United States has authority "to reverse or modify a state-court judgment."  *Id.*

19           This Court must recognize these principles, and may not alter a decision of the state

20   court.  While it appears that Claimants now attempt to present additional evidence and

21   argument, and wish the Court to find that Gore was acting as a "volunteer" of Platinum,

22   the Court cannot do so.  The state court's holding that Gore was not an agent of Platinum

23   prior to May 24, 2013 necessarily encompassed Claimants' new arguments here.  *See*

24   *Scottsdale Jaycees v. Superior Ct. of Maricopa Cty*., 499 P.2d 185, 188 (1972) ("One who

25   volunteers services without an agreement for or expectation of reward, may be a[n agent]

26   of the one accepting such services.").  But again, the time to make arguments and present

27   evidence of Gore's alleged agency with Platinum was before the trial court.

28           As stated, the trial court, as affirmed by the appeals court, determined that Gore was

not an agent of Platinum and therefore that Platinum was not liable for Gore's conduct prior to the relevant date.  It logically follows that if Platinum is not liable for his conduct, Platinum's insurer cannot be liable to pay a judgment entered against him.  The only possible link between the Claimants and Continental necessarily must run through Platinum.  Because that link has been severed, there is no option for this Court to find Continental liable to indemnify the judgment without reversing the decision of the state court, which this Court may not do.

The Court recognizes that Claimants did not file this action.  However, their briefing and exhibits overwhelmingly relate to their underlying argument that the state court got it wrong in finding that Gore was not an agent of Platinum during the relevant time period. The Court cannot proceed any further.  The Court must conclude, based on the state court decisions, that Continental does not have a duty to indemnify Gore for conduct prior to May 24, 2013.  For this Court to hold otherwise would be to disturb rulings of the Arizona Superior Court and the Arizona Court of Appeals.  This Court does not have the authority to do so.

In so holding, the Court finds that Continental has sought declaratory judgment for the purpose of "early access to federal courts" in order to spare future litigation, and to prevent suits brought by various Claimants against Continental seeking indemnification on the judgment against Gore.  *See Seattle Audubon Soc.*, 80 F.3d at 1405.  Moreover, Continental has established that the dispute is "definite and concrete, touching the legal relations of parties having adverse legal interests;" and "real and substantial" and the Court finds that it requests "specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  *See MedImmune, Inc.*, 549 U.S. at 127.  This ruling also serves to clarify the legal relations at issue and afford relief from the uncertainty and controversy faced by the parties. *See Washington*, 759 F.2d at 1357.  Therefore, the Court finds that a declaratory judgment is appropriate in this matter.

**IV.    Conclusion**

1    The Court cannot comprehend the horrendous ordeal the Claimants and their

2    families have been through, which will undoubtedly be felt the rest of their lives. The

3    Court is bound however to follow the law, and the findings by the state court that Platinum,

4    and thus Continental, was not responsible for Gore's conduct prior to May 24, 2013. The

5    proper course to contest that determination is through the state court appellate process,

6    which Claimants have taken advantage of. However, this Court, as a court of original and

7    specific jurisdiction, does not have the ability to modify these prior rulings. Therefore, the

8    Court must enter declaratory judgment in favor of Continental as to the duty to indemnify

9    the judgments against Gore.

10    The Court notes that Continental apparently did not move for summary judgment as

11    to the other count in its Complaint related to the duty to continue defending Gore in the

12    state court action. While it appears that many of these issues may be moot, as the majority

13    of the state court proceedings appear to be concluded, the Court does not have sufficient

14    information at this time to issue such a declaration. Within fourteen days of this Order,

15    Continental shall file a status report on whether it is proceeding with that claim or whether

16    it is dismissing it, thereby terminating this matter. Alternatively, the parties shall file their

17    Notice of Readiness for Final Pretrial Conference in accordance with the Scheduling Order.

18

19    Accordingly,

20    **IT IS HEREBY ORDERED** that Continental's Motion for Partial Summary

21    Judgment (Doc. 106) is **granted**. Continental has no duty to indemnify the judgment at

22    issue.

23    **IT IS FURTHER ORDERED** that within fourteen (14) days of this Order,

24    Continental shall file a Status Report as to whether it is proceeding with the duty to defend

25    claim, or whether it is voluntarily dismissing that claim. Alternatively, the parties shall file

26    their Notice of Readiness for Final Pretrial Conference on the remaining claim.

27    …

28    …

1    **IT IS FINALLY ORDERED** that the Claimant's Motion for Summary Judgment

2    (Doc. 82) is **denied**.

3    Dated this 9th day of August, 2021.

4

5

6    _____

7    Honorable Diane J. Humetewa
     United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28